# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 3:19cr82–HEH |
| | ) |
| ANTHONY EUGENE PETERS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
### (Defendant's Motion to Suppress Evidence and Statements)

As a result of a stop and frisk conducted by officers of the Richmond City Police Department on February 3, 2019, on the grounds of Creighton Court Apartments, the Defendant, Anthony Eugene Peters ("Defendant") was charged with possession of a firearm by a convicted felon. Claiming that the arresting officers acted without articulable and particularized suspicion that criminal activity was afoot, Defendant moves the Court to suppress the firearm seized, along with any accompanying remarks made by him to the officers. Both the Defendant and the United States have filed memoranda supporting their respective positions. On July 29, 2019, following the testimony of the arresting officers, the Court heard oral argument.

The Creighton Court Apartment complex ("Creighton Court") is managed and operated by the Richmond Redevelopment and Housing Authority ("RRHA"). RRHA has authorized officers of the Richmond City Police Department to enforce the trespass

laws of the Commonwealth of Virginia (Va. Code Ann. § 18.2-119) upon all RRHA-owned real property within the City of Richmond. (Gov't's Ex. 1.)[1]

During the early evening hours of February 3, 2019, Officers Stephen Butler and Mitchell Cooper, of the Richmond City Police Department, were patrolling Creighton Court. While Officer Cooper was still in training, Officer Butler had been a Richmond City Police Officer for eight years. Officer Butler was familiar with the Creighton Court complex having made a number of prior arrests in the area for drug possession and trafficking, as well as firearm offenses. At approximately 5:30 p.m., in the 2000 block of Creighton Road, the officers observed the Defendant walking along the sidewalk accompanied by Gary Garrison ("Garrison"). Officer Butler recognized the Defendant as someone with whom he had had prior contact. He knew from a prior review of police records that the Defendant was not a resident of Creighton Court. The officer further believed from those records that the Defendant had been previously convicted of trespassing on Creighton Court property and had been barred from the area. The records, which were several years old, revealed that the Defendant was believed to be a gang member and that he should be considered "probably armed." (Gov't's Ex. 3.)

Officer Butler also testified that he had received information from a confidential informant, who he believed at the time was reliable,[2] that the Defendant was selling crack

---

[1] Apartment complexes owned by RRHA are restricted access with signs posted on such structures. Access is limited to residents, their guests, RRHA employees, and others with a legitimate business or social purpose.

[2] Officer Butler concedes that the informant had a number of prior felony convictions as well as a pending felony drug charge.

2

cocaine in the area in which the officers encountered him. The officer was also aware that Garrison had been prohibited from being in Creighton Court. Consequently, the officers, in uniform and driving a marked police unit, exited and approached the Defendant and Garrison. As they did, the officers activated their body cameras. Officer Butler walked directly toward both individuals and asked them what they were doing on Creighton Court property since they were not supposed to be there. According to Officer Cooper, they were approximately three to five feet from the Defendant. He described their voice tone as stern but respectful. When asked, the Defendant indicated he had no identification. Officer Butler then inquired if either had weapons and asked if they could lift their shirts up. The Defendant, who Officer Butler addressed by his nickname, turned and faced the officer. The Defendant, in an emotive voice, disputed that he was trespassing, claiming that his prior charge had been dismissed and accused the officers of harassing him. While Garrison readily raised his shirt upon the officers asking the men if they were armed, the Defendant only partially lifted his shirt but hesitated to expose his waistline. When Officer Butler persisted asking "What's in your pockets?" the Defendant finally lifted his shirt over the belt buckle area. When the Defendant did so, Officer Butler testified that he observed a cylindrical bulge suggestive of the configuration of the muzzle of a firearm. Meanwhile, Garrison continued walking unimpeded in the direction of an apartment building. Officer Cooper testified that neither he nor Officer Butler ever directed the Defendant or Garrison to stop walking.

Officer Butler testified that he had learned from a confidential informant that men wearing skinny jeans, of the same type Defendant was wearing, often secure a firearm by

3

wedging it into the front of their pants. Officer Butler placed his hand in that area and detected the grip of a firearm, which he then seized. The officers then attempted to restrain the Defendant. He resisted their commands and was forcibly placed on the ground and secured.

Officer Butler testified on cross-examination that he had not reviewed police records to confirm that the Defendant's 2011 arrest for trespassing on Creighton Court property resulted in a conviction—which it did not. He also explained that he did not use his radio to confirm the Defendant's suspected prior trespass conviction, because he did not want to divert his attention from the Defendant given the fact that Officer Cooper was a trainee officer with only a few days of on-the-street experience. Neither officer recalled directing the Defendant to stop at the time of the initial encounter. In fact, Garrison continued walking after raising his shirt.

As Judge Wilkinson prefaced his analysis of a similar investigatory stop in *United States v. Bumpers*, "[t]he touchstone of the Fourth Amendment inquiry is one of simple reasonableness. . . . The term itself suggests a balance. . . . that balance lies 'between the public interest' in basic community safety and 'the individual's right to personal security free from arbitrary interference by law officers.'" 705 F.3d 168, 171 (2013) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).

The officers' initial contact with the Defendant in this case was what the U.S. Supreme Court has characterized as a "police-citizen encounter," which falls short of implicating the Fourth Amendment. *See Fla. v. Bostich*, 501 U.S. 429, 439–40 (1991) and *United States v. Lewis*, 606 F.3d 193, 197–98 (4th Cir. 2010). The engagement

4

began by asking the two men why they were in Creighton Court. Suspecting that they were trespassing on posted property and knowing that the area had a reputation of harboring armed drug traffickers, Officer Butler asked the Defendant and Garrison to lift their shirts. Officer Butler testified that this was a common practice in that area to ensure that the individual he was addressing was not armed. Garrison immediately complied and continued walking. The Defendant partially raised his shirt and declined to display the front area of his trousers, where Officer Butler knew firearms are commonly concealed.

At this point, there is a plausible argument that the encounter escalated to an investigative stop, premised on reasonable suspicion that the Defendant may be armed based on articulable facts. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *Terry v. Ohio*, 392 U.S. 1 (1968). As the Fourth Circuit noted in *United States v. Branch*, "in order to justify a *Terry* stop, a police officer must simply point to 'specific and articulable facts which, taken together with rational inferences from the facts,' *Terry*, 392 U.S. at 21, evince 'more than an inchoate and unparticularized suspicion or hunch' of criminal activity . . . ." 537 F.3d 328, 336 (4th Cir. 2008) (citing *Wardlow*, 528 U.S. at 124 (internal citations omitted)).

The Court in *Branch* added that courts "must take a commonsense and contextual approach to evaluating the legality of a *Terry* stop." *Branch*, 537 F.3d at 336. The Fourth Circuit further noted that "reasonable suspicion is a nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable

and prudent [people], not legal technicians, act." *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (internal quotation marks omitted)).

This is not the frequently litigated case of a random stop of a seemingly suspicious person on a street corner. Officer Butler clearly had articulable suspicion that the Defendant may be engaged in criminal activity when he encountered him. This suspicion escalated as he and Officer Cooper approached the men. Aside from his interactions with the Defendant that day, Officer Butler, who frequently patrolled that area, had recently reviewed Richmond Police Department records pertaining to the Defendant. While the records were admittedly not current, they indicated that the Defendant was not only "probably armed" but had also been previously implicated in selling narcotics. (Gov't's Ex. 3.) Officer Butler also testified that he was aware that the Defendant had a prior arrest for trespassing on Creighton Court property, a high crime area, but was unaware that the case had been dismissed.

Given the circumstances at hand, coupled with the well-founded probability that the Defendant was most likely a trespasser, Officer Butler was justified in requesting that the Defendant raise his shirt to show that he was not armed. The Defendant's partial compliance elevated Officer Butler's suspicion. When the Defendant finally lifted the front portion of his garment, Officer Butler credibly testified that the contour of a firearm was visible justifying its seizure. Therefore, Defendant's Motion to Suppress Evidence and Statements will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: August 8, 2019
Richmond, Virginia